# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-1896
Filed March 11, 2026

———————————

**In the Interest of D.C., Minor Child,**

**R.C., Father,**
Appellant.

———————————

Appeal from the Iowa District Court for Plymouth County,
The Honorable Daniel P. Vakulskas, Judge.

———————————

**AFFIRMED**

———————————

Kevin J. Huyser of Rensink, Pluim, Vogel & Huyser, Orange City, attorney
for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Jim Bybee of Juvenile Law Center, Sioux City, attorney and guardian ad
litem for minor child.

———————————

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

D.C. turns eighteen this month. About four months ago, the juvenile court terminated the parental rights of her father, R.C. He appeals, raising two claims: (1) the juvenile court wrongly decided that reasonable efforts did not factor into the analysis of Iowa Code section 232.116(1)(f) (2025) and (2) it was in D.C.'s best interests for the court to establish a guardianship with her aunt rather than terminating his parental rights. Neither claim compels us to reverse the termination order.[1]

## I.      Facts and Prior Proceedings

When D.C. was thirteen, her mother and father were arrested for attempted murder after "shooting up" a house in Colorado. After her parents' June 2022 arrests, D.C. and her younger brother, M.J., went to live with an adult brother and his wife, D.V., in Le Mars.[2] But the Iowa Department of Health and Human Services intervened about a year later when investigators learned that the adult brother was on the sex offender registry. The adult brother was arrested for probation violations, then absconded in April 2023. One month later, the juvenile court adjudicated D.C. and M.J. as children in need of assistance (CINA). And the children remained in D.V.'s care until January 2025.[3]

---

[1] We engage in a de novo review of termination proceedings, "examining both the facts and law and adjudicating anew those issues properly preserved and presented." *In re A.R.*, 932 N.W.2d 588, 589 n.1 (Iowa Ct. App. 2019).

[2] R.C. is not M.J.'s father. His father, M.J. Sr., is incarcerated in Illinois. The juvenile court terminated the parental rights of all three parents. But only R.C. appeals.

[3] The juvenile court noted in the fall of 2024 that D.V. had done "an amazing job of caring for the children." But after more than two years of raising them on her own, she decided the children would benefit from a "two-parent household."

After a brief stint in shelter care, in May 2025, the children moved to the home of an aunt and her family in Chicago. While living with her aunt, D.C. has flourished—earning all A's in her high school courses, moving up to honors classes, participating in extracurricular activities, and interacting with her cousins.

Meanwhile, R.C. has been incarcerated in Colorado awaiting his criminal trial.[4] He has not had contact with D.C. since the CINA case began. But the lack of contact was not entirely his fault. The case manager did not notify him that the department had taken custody of D.C. until June 2024, more than one year after the CINA adjudication. Troubled by the department's prolonged inaction, the juvenile court found in September 2024 that the State had not made reasonable efforts to reunify R.C. with his daughter. The court delayed its decision on permanency for six months to allow more time for reunification.

In August 2025, the State petitioned to terminate parental rights under Iowa Code section 232.116(1), paragraphs (e) and (f). At the termination hearing, D.C. testified that her relationship with her father was beyond repair. At the close of the hearing, the juvenile court allowed R.C. to make a non-testimonial statement. He stressed that he had not yet been convicted and that he loved his daughter. R.C. also thanked D.C.'s aunt for providing care and expressed his desire that D.C. stay with family.[5]

---

[4] R.C. testified at a permanency review hearing that he was going to ask for pretrial release based on his medical condition. But that release had not happened by the time of termination. And the juvenile court had "no evidence about the status of his case."

[5] The court let D.C. respond to her father's statement. She focused on the poor decisions that both her parents had made: "If they followed the law and did what they were supposed to do, we wouldn't be where we are today. So how is it fair for me and my

In its ruling, the juvenile court found that the State did not meet its burden of proof under paragraph (e), explaining that the department failed to make reasonable efforts toward reunification by delegating to D.C. the decision whether to have contact with R.C. *See In re S.P.*, No. 16-1919, 2017 WL 108798, at *5 (Iowa Ct. App. Jan. 11, 2017). But the court granted the State's petition under paragraph (f). R.C. appeals.[6]

## II. Analysis

### A. Reasonable Efforts

In granting the State's petition to terminate parental rights under paragraph (f), the juvenile court stated that "reasonable efforts" did not factor into that ground. R.C. contests that statement in his petition on appeal. He cites *In re L.T.* in arguing that the scope of the department's reasonable efforts after removal impacts the burden of proving the elements of paragraph (f). 924 N.W.2d 521, 527 (Iowa 2019). In R.C.'s view, the juvenile court should have denied the State's request to terminate his rights under paragraph (f) for the same reason it rejected termination under paragraph (e).

The department is required to "make every reasonable effort to return the child" to their home as quickly as possible consistent with their best interests. Iowa Code § 232.102(6). This is not "a strict substantive

---

brother to keep having to go through this, when they have proven, on multiple occasions, that they can't follow the law."

[6] The termination involves three steps. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). First, the State must prove a statutory ground for termination under Iowa Code section 232.116(1). *Id.* Second, the State must show termination is in the child's best interests under section 232.116(2). *Id.* Third, parents may rely on exceptions to termination in section 232.116(3). *Id.* We only address steps that the parent disputes. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

requirement of termination." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). What efforts are reasonable depends on the circumstances. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000).

We agree with R.C. that whether the department made reasonable efforts to reunify him with D.C. is relevant to proving the final element of paragraph (f). *See* Iowa Code § 232.116(1)(f)(4) (requiring the court to find that the child cannot be returned to the parent's custody as provided in Iowa Code section 232.102); *L.T.*, 924 N.W.2d at 527–28. And while "reasonable efforts can, and often do, include efforts toward reunifying a family," the child's health and safety are the paramount concerns and may take precedence over reunification efforts. *See L.T.*, 924 N.W.2d at 529.

In this case, returning D.C. to her father's custody at the time of the termination hearing was impossible. *See* Iowa Code § 232.116(1)(f)(4); *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (interpreting statutory phrase "at the present time" to mean the date of the termination hearing). D.C. testified her father neglected her before his incarceration and their relationship is "beyond repair." He was incarcerated awaiting trial in another state with no prospect of release and had no means to resume custody. Providing additional services would have been contrary to her best interests and would not have improved the chances of reunification, so the department's efforts were not unreasonable under paragraph (f).

## B. Guardianship

R.C. next contends that D.C.'s best interests would have been better served by placement in a guardianship with her aunt rather than terminating his parental rights. He recognizes that "a guardianship is not a legally preferable alternative to termination." *See A.S.*, 906 N.W.2d at 477 (citation

5

omitted). But he counters that "the potential duration of the guardianship would be short given that D.C. is a teenager." That is an understatement. Because D.C.'s eighteenth birthday is imminent, there would be no time to establish a guardianship while she was still a child. *See id.* (noting under section 232.118(3) the authority of a guardian appointed by the court terminates when the child reaches the age of majority).

What's more, D.C. expressed her preference for termination of her father's parental rights over a guardianship. As the State argues, "And after many years of trauma and instability, termination remains in her best interest and is consistent with her desires."

**AFFIRMED.**